Law Office of Gregory S. Parvin
290 N. Willow St. • Wasilla, AK 99654
P: (907) 376-2800 • F: (907) 531-1255
Attorney: gparvin@gparvinlaw.com
Paralegal: gcuret@gparvinlaw.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| REBECCA P. STOKES-KOENIG, as personal representative of the ESTATE OF WILMA E. CHURCHILL STOKES, <br><br> Plaintiff(s), <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant(s). | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. _____ |

Alaska Superior Court Case No. 1WR-23-00004 PR

## COMPLAINT FOR DAMAGES

Plaintiff Rebecca P. Stokes Koenig, as personal representative of the Estate of Wilma E. Churchill Stokes, by and through her attorney, The Law Office of Gregory S. Parvin, states and alleges as follows:

1. Rebecca P. Stokes-Koenig [hereinafter, "Stokes-Koenig"] is the adult biological daughter of Wilma E. Churchill Stokes, now deceased. Stokes-Koenig was duly appointed the personal representative of her mother's estate in Alaska Superior Court case number 1WR-23-00004PR on May 22, 2023. She appears only in her representative capacity. A true and correct copy of the following are attached as **Exhibit 1:**[1]

    a. May 22, 2023 Statement of Informal Appointment of Personal Representative Due Intestacy; and

    b. May 22, 2023 Letter of Administration.

---

[1] Exhibit 1 – Personal Representative Orders in 1WR-23-00004PR, *ITMO the Estate of Wilma E. Churchill Stokes*

2. Wilma E. Churchill Stokes [hereinafter, "Wilma"], whose date of birth was June 25, 1929, was, at all times relevant, an Alaskan elder residing in Wrangell, Alaska.

3. The acts and omissions upon which this cause of action is based occurred in Wrangell, Alaska.

4. This suit is brought pursuant to the Federal Torts Claims Act 28 U.S.C. section 2674, and this Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. 1346(b).

5. Notice of this claim, as required by 28 U.S.C. section 2675, was received on behalf of the Indian Health Service by the Office of General Council, General Law Division, Claims Office, United States Department of Health and Human Services, on June 7, 2023.

6. More than six (6) months have elapsed since Plaintiff's claim was lodged with the appropriate federal agency; upon information and belief, that agency is still waiting on its medical examiner's review, so the United States' investigation is still on-going. Pursuant to 28 U.S.C. section 2675(a), it is appropriate for Plaintiff to initiate litigation having received no final decision by the agency after the passage of 6 months.

7. Wilma sustained injuries at the time she was a resident of a long-term care facility within Wrangell Medical Center Hospital operated by the Southeast Alaska Regional Health Consortium [hereinafter "the long-term care facility"]. Upon information and belief, the long-term care facility is a Federally Qualified Health Center Program grantee under 42 U.S.C. section 245 and its employees are deemed United States Public Health Service employees whose liability for damages is covered by the Federal Tort Claims Act.

8. At all times pertinent to this Complaint, the employees at the long-term care facility who are alleged to have acted in a negligent or reckless manner were acting within the scope of their employment.

## GENERAL ALLEGATIONS

9. Wilma's care at the long-term care facility had to comply with her Care Plan, a true and correct copy of which is attached as **Exhibit 2**.[2]

---

[2] Exhibit 2 – SEARHC Care Plan for Wilma Stokes

**COMPLAINT FOR DAMAGES** *STOKES-KOENIG ITMO STOKES V. USA*
CASE NO. _____
Page 2 of 7

Case 3:24-cv-00069-JMK   Document 1   Filed 03/21/24   Page 2 of 7

10. Among the disabilities the long-term care had notice of prior to August 9, 2021 was that Wilma had some degree of dementia/Alzheimer's, required "total assistance" with transfers and bed mobility and locomotion, was "totally dependent on 1-2 staff" to assist her with bathing," was "totally dependent" on 1-2 staff for repositioning and turning in bed," and was functionally blind and needed staff assistance in repositioning herself in a wheelchair or recliner "as she does not have the ability do so herself." Her Care Plan included these mandatory instructions, beginning no later than October 29, 2020: "Staff will keep Wilma's bed in the lowest position with side rails x2 up in an effort to decrease Wilma's chances of falling out of bed. Floor mats will be used at all times Wilma is in bed."

11. Upon information and belief, an employee of the long-term care facility, Mr. Mel Bjorge, CNA, [hereinafter, "Bjorge"] was alone while bathing Wilma in the bathing area of the facility. Bjorge rolled Wilma on her side on a "spa table" but did not have the bed railings raised to protect Wilma from rolling off the bed platform. Despite the known, documented risk of Wilma falling, Bjorge turned away from Wilma, and when he was turned away from her, Wilma's body fell off the table onto the hard floor which was not protected with fall mats. The functionally blind and disabled Wilma was helpless to anticipate her fall or realize what was happening as she plummeted to the floor and was seriously injured. The experience terrified and traumatized Wilma.

12. When Wilma's body landed on the hard floor, she struck her head and soon developed a "palm sized" hematoma and "goose egg" bump in the left parietal area. Blood oozed from the scalp abrasion for some time and soft tissue swelling from her head-blow was visible on her medical imaging.

13. When Wilma's body landed on the hard floor, without the benefit of defensive reactions usual to sighted, able-bodied persons, she also sustained an acute left intertrochanteric fracture. In other words, the fall broke Wilma's left femur close to her hip joint where her hip extensors and abductor muscles attach. Wilma could not reasonably undergo surgery to repair such a fracture due the risk associated with general anesthesia, and she was incapable of ever being weight bearing again with such a fracture.

14. When Wilma's youngest daughter arrived at the long-term care facility to check on her mother soon after being notified of the fall, Wilma's only audible and understood words to her daughter were, "Evil. Evil. Hurt. Hurt."

15. The long-term care facility's administrator in Wrangell admitted in writing on August 20, 2021 that "[t]he side rail [on the spa bed] should have been placed in an upright position while [the CNA was] turning away from providing care."

16. Between August 9, 2021 and August 28, 2021, Wilma experienced great pain, suffering, anxiety, and emotional distress from the injuries and trauma she suffered in the accident. Her medical records and witness accounts noted that she "cried out in pain" many times. Her pain was extreme enough that her pain medication dosing had to keep increasing until she was receiving Fentanyl, a synthetic opioid, and Dilaudid (hydromorphone), a semi-synthetic opioid antagonist, for "breakthrough episodes" of pain. The use of intense pain medications meant she did not feel like eating and towards the end she was only receiving fluids.

17. While Wilma had not initially required Ativan (lorazepam), her anxiety after the accident was so great that Ativan was prescribed in an effort to address her extreme anxiety.

18. On August 28, 2021, Wilma died from complications secondary to her left hip fracture arising from the fall at the long-term care facility, according to the State of Alaska's medical examiner.

19. Wilma's pre-death pain, suffering, emotional distress and other damages, as well as her wrongful death were caused by the negligent and/or reckless acts and/or omissions of the long-term care facility's employees or agents acting within the course and scope of their employment.

20. Tragically, within weeks of Wilma's death, Bjorge, committed suicide.

## FIRST CAUSE OF ACTION
### (Survivorship Claim Due to Common Law Negligence/Recklessness)

21. Plaintiff incorporates the allegations in paragraphs 1-21 of her Complaint.

22. Plaintiff is the duly authorized personal representative of the Estate of Wilma E. Churchill Stokes, deceased. The law allows Stokes-Koenig to bring a survivorship claim on behalf of the Estate of Wilma E. Churchill Stokes, pursuant to AS 09.55.570.

23. The long-term care facility staff owed a duty of reasonable care to its resident, Wilma, a vulnerable adult. Since the relationship between the long-term care facility and Wilma was a type of "special relationship" akin to a fiduciary relationship, the long-term care facility and its staff, including but not limited to Bjorge, owed a duty to protect Wilma from foreseeable harm under the circumstances.

24. The long-term care facility and its staff and agents breached its duty of care to Wilma on or about August 9, 2021.

25. In not using the bed rail and fall mats, as directed in the Care Plan, to protect Wilma, and in having only one caregiver bathing her, the long-term care facility and its staff and agents committed an act of negligence or recklessness obvious to a lay person under the circumstances.

26. The negligent or reckless acts alleged herein were the cause of bodily injuries to Wilma.

27. On behalf of the Estate, Plaintiff is entitled to damages for the harm suffered by Wilma prior to her death on August 28, 2021, as allowed by Alaska law.

## SECOND CAUSE OF ACTION
**(Survivorship Claim Due to Breach of Professional Standards by the Long-Term Care Facility Including its CNA Bjorge)**

28. Plaintiff incorporates the allegations in paragraphs 1-28 of her Complaint.

29. Plaintiff is the duly authorized personal representative of the Estate of Wilma E. Churchill Stokes, deceased. The law allows Stokes-Koenig to bring a survivorship claim on behalf of the Estate of Wilma E. Churchill Stokes, pursuant to AS 09.55.570.

30. The long-term care facility, including but not limited to its CNA staff performing services set forth in Wilma's plan of care had a provider-patient relationship at the time of the acts or omissions alleged on August 9, 2021.

31. The long-term care facility, including its CNA Bjorge, was required to possess the degree of knowledge or skill on August 9, 2021 of health care providers in the field in which

they were practicing. Additionally, the long-term care facility, including its CNA Bjorge, was required to exercise the degree of care ordinarily exercised under the circumstances by health care providers in the field in which they were practicing.

32. The long-term care facility, including its CNA Bjorge, either lacked the degree of knowledge or skill required or failed to exercise this degree of care.

33. As a proximate result of the long-term care facility's or its employee, CNA Bjorge's, lack of knowledge or skill or failure to exercise the required degree of care, Wilma fell from the spa table on August 9, 2021 hitting a hard surface and sustained serious physical injuries that would not otherwise have occurred.

34. The damages Wilma sustained resulted from acts or omissions by the long-term care facility, including its employee CNA Bjorge acting within the scope of his employment, that were reckless, as well as a breach of the controlling standard of care under the circumstances.

35. On behalf of the Estate, Plaintiff is entitled to damages for the harm suffered by Wilma prior to her death on August 28, 2021, as allowed by Alaska law.

### THIRD CAUSE OF ACTION
### (Wrongful Death)

36. Plaintiff incorporates the allegations in paragraphs 1-36 of her Complaint.

37. The Long-term Care Facility staff owed a duty of reasonable care to its resident Wilma E. Churchill Stokes, a vulnerable adult. Since the relationship between the facility and Wilma was a type of "special relationship" akin to a fiduciary relationship, the facility and its staff, including but not limited to Bjorge, owed a duty to protect Wilma from foreseeable harm under the circumstances.

38. The Long-term Care Facility and its staff and agents breached its duties owed to Wilma on or about August 9, 2021 and as a natural and proximate cause of the negligent and wrongful acts or omissions of the facility and its employees acting within the scope of their employment, they were a cause of her death.

39. As the personal representative of Estate of Wilma E. Churchill Stokes, Ms. Stokes Koenig is entitled to seek a sum which will fairly compensate the statutory beneficiaries for their injuries resulting from Wilma's death under the circumstances.

WHEREFORE, Plaintiff prays for the following relief:

1. For judgment against defendant for compensatory damages in accordance with the Federal Tort Claims Act, the exact amount to be proven at trial;
2. For an award of Plaintiff's costs and attorneys' fees, if allowed by applicable law;
3. For allowable post-judgment interest;
4. For other such relief that the Court deems just and equitable.

DATED: March 21, 2024  THE LAW OFFICE OF GREGORY S. PARVIN

*/s/ Gregory S. Parvin*

Gregory S. Parvin • ABA No. 9809044